Mary Lou **EVAN**, Plaintiff,

v.

Shirley **ESTELL**, Defendant.

No. 3:99–1986.

United States District Court,
M.D. Pennsylvania.

Sept. 18, 2001.

John E. Kusturiss, Jr., David B. Kline, Ostroff Villari & Kusturiss, P.C., Lansdale, PA, for plaintiffs.

Edward R. Murphy, Murphy & O'Connor, Philadelphia, PA, for defendants.

### *MEMORANDUM AND ORDER*

MANNION, United States Magistrate Judge.

Before the court is the plaintiff Mary Lou Evan's motion to preclude the defendant's introduction at trial of surveillance videotape evidence. (Doc. No. 24). This matter has come before the court as a result of an automobile accident that occurred on September 12, 1997. Following that accident, a civil action was filed by the plaintiff in the Court of Common Pleas of Luzerne County but later removed by the defendant to this federal court. (Doc. No. 1). In June of 2000, a case management order was entered by the Honorable Raymond J. Durkin in which he set forth dates to control the orderly pretrial progression of this matter. (Doc. No. 9). Included in that order was a discov-

ery deadline of June 1, 2000. By order of the court, and agreement of counsel, that discovery deadline was later extended until September 30, 2000. (Doc. No. 11).

In plaintiff's memorandum of law, she alleges that:

"By letter dated September 5, 2001, Defendant for the first time advised that she had surveillance videotape evidence of the plaintiff. Defendant, however, refused to produce the videotape(s) until defendant took the Plaintiff's deposition. A copy of the defendant's letter is attached as Exhibit "B". Plaintiff was previously deposed on March 2, 2000." (Doc. No. 25, p. 2).

The plaintiff, in essence, argues that since she was not notified of this surveillance videotape evidence in the custody of the plaintiff, and more than eleven (11) months have passed since the end of the discovery deadline, that plaintiff is being "ambushed on the eve of trial" which violates the letter and spirit of the Federal Rules and the court's previous discovery order.

The defendant filed a brief in response and opposition to the plaintiff's motion to preclude and argues that she should not, be required to turn over the surveillance videotape unless she is given an opportunity to hold a second deposition of the plaintiff prior to disclosure. The defendant argues that the use of the videotape would only be for impeachment purposes and not offered as substantive evidence. As such the defendant contends that she is entitled to redepose the plaintiff to determine if there have been "intervening changes in the plaintiff's physical condition since her (previous) deposition of March 2, 2000" and thereafter, turn over a copy of the videotape. To do otherwise, the defendant argues would diminish the impeachment value of the surveillance video. No where does the defendant indicate the date or dates on which this surveillance video was conducted. In this regard, the court is unaware of what amount of time had transpired between the plaintiff's March 2, 2000 deposition and the subject surveillance video, the existence of which have just recently been disclosed to plaintiff.

Discovery in the federal courts is governed by Rule 26 of the Federal Rules of Civil Procedure. Specifically, Fed.R.Civ.P. 26(b)(1) states in pertinent part:

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable material. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence...

There appears to be no disagreement between the parties that the subject surveillance video is "relevant" information. This is a personal injury matter and the video surveillance presumably relates to the physical condition, disability and credibility of the plaintiff. This evidence is directly relevant to her claim for damages.

It is sometimes argued that the content of a surveillance video is privileged as trial preparation materials and therefore excluded from discovery under Fed.R.Civ.P. 26(b)(3). This privilege, however, has its exceptions. Rule 26(b)(3) allows discovery where a party can show that there is a "substantial need" for the material and the party is unable, without undue hardship, to obtain the "substantial equivalent of the materials" by other means. Most courts in deciding this issue have determined that surveillance videos are discoverable because of their nature, and the fact that a party would not be able to obtain equivalent materials, since, the surveillance video itself was taken at a particular time and place that can never be replicated. (See e.g. *Snead v. American Export—Isbrandtsen Lines, Inc.*, 59 F.R.D. 148, 150–151 (E.D.Pa. 1973)).

In the instant case, the defendant has not argued that the work product privilege applies, however, had she made such an argument, the court would find that surveillance videotapes, by their very nature, fit within the exception set forth in Rule 26(b)(3).

█ It does not appear that the Third Circuit has specifically ruled on the issue of whether prior to turning over a surveillance video, a possessing party may *require* a second or subsequent deposition concerning the physical condition and limitations of the surveilled party. At least two district courts in the Southern District of New York have apparently ruled that the defendant is not required to turn over a covert surveillance video until such time as the surveilled party has been deposed. In *Brannan v. Great Lakes Dredge & Dock Company*, 1998 WL 229521 (S.D.N.Y. May 7, 1998), the plaintiff was seriously injured in an accident which resulted in suit being filed. In January of 1997, the plaintiff appeared for a deposition. The defendant "chose not to ask plaintiff questions concerning his disability and/or limitations as of that time." It turns out later that the defendant became suspicious as to the plaintiff's injuries and placed him under video surveillance. Thereafter, the defendant noticed the plaintiff that the videotapes existed, but refused to turn them over unless the plaintiff first submitted to a deposition concerning the extent of his disability. The court concluded that the plaintiff would be entitled to the videotapes, provided, he first made himself available for a further deposition "on the question of the extent of his injuries and/or recovery as of the time the videotapes were made." The court went on to note that the defendant would not be permitted to examine the plaintiff on any other matters.

It appears that *Brannan* is distinguishable from our case in that the plaintiff had not been previously deposed on the issue of "his disability and/or limitations as of that time." (*Brannan, Id.* at 1). In the instant case, according to the memorandum of law in support of the plaintiff's motion, not only has there been a prior deposition of the plaintiff, but the defense has had the opportunity to "depose Ms. Evans at length and in detail on these subjects." (Doc. No. 25, p. 2–3).

Also cited by the defendant is *Bachir v. Transoceanic Cable Ship Company*, 1998 WL 901735 (S.D.N.Y. Dec. 28, 1998). In *Bachir*, the court noted the distinction between surveillance videotapes used as substantive evidence and those used for impeachment evidence. If the videotapes were to be used as substantive evidence, the court properly concluded that the tapes must be turned over, "without limitation". If, however, the tapes were to be used for impeachment purposes only, then the production of the video tape surveillance was directed "within ten (10) days after the date on which plaintiff's deposition is completed." *Id.* at 2. There is no indication in *Bachir* that any previous deposition was taken of the plaintiff. Rather, the court in following *Brannan* stated "discovery of impeachment surveillance videotapes is usually not permitted prior to the completion of plaintiff's deposition." *Bachir, Id.* at *1 (citing *Brannan,* supra). In the case before this court, it appears uncontroverted that the plaintiff's deposition has been taken as of March 2, 2000. In this regard, the defendant has already had the opportunity to ask questions and solidify the information and evidence relating to the plaintiff's disability and physical condition as it relates to the injuries alleged to have occurred as a result of the defendant's negligence. Unlike the defendants in *Brannan* and *Bachir,* Ms. Estell has had the benefit of a previous deposition and, in theory, the ability to tie down the plaintiff with regard to her physical condition.

In this circuit, the Eastern District of Pennsylvania has come across this issue on a number of occasions. In *Snead v. American Export–Isbrandtsen Lines, Inc.,* 59 F.R.D. 148 (1973), Judge Ditter said "It goes without saying that the means to impeach should not be the exclusive property of the defense. Any rule to be formulated, therefore must balance the conflicting interest of the plaintiff against the conflicting interests of the defendant and protect both insofar as it is possible to do so." (*Id.* at 151). In balancing the interests of the parties, the court held that the defense would be barred from using the video surveillance films unless they were disclosed in advance to the plaintiff. However, before the disclosure, "the defense must be given an opportunity to depose the plaintiff fully as to his injuries, their effects and his present disabilities." (*Id.* at 151). As noted previously, the uncontroverted information presently before this court would indicate

that the defendant has had just such an opportunity on March 2, 2000.

In *Gibson v. National Railroad Passenger Corp.*, 170 F.R.D. 408 (1997), the court found that the plaintiff had been previously deposed by the defendant and "presumably, because this is a personal injury action, defendants deposed plaintiffs concerning the nature and extent of (plaintiff's) injuries. Having committed plaintiff to a description of (his) physical condition, any impeachment value of the tape has been preserved and there can be no reason not to disclose at least the existence of the tapes..." The court went on to hold that the defendants must make a decision as to whether "They intend to introduce any surveillance evidence at trial in sufficient time to allow plaintiffs to be prepared without undue delay...(citing *Carlton v. National Railroad Passenger Corp.*, 1987 WL 7607 (E.D.Pa. March 6, 1987))... If so, (defendant) must then produce any such films or photos to plaintiffs for inspection and copying." *Gibson*, supra at 410–411. Like *Gibson*, the plaintiff's prior deposition should be sufficient to preserve the impeachment value of the subsequent surveillance video and therefore the defendant must now choose whether she wishes to use and disclose the videos, or not use and not disclose them as evidence.

It is concerning to the court that the first time that any notification concerning the existence of this surveillance video occurred shortly before the *final* pretrial conference. Especially since the content of a video surveillance tape can have a dramatic effect when presented in court. In this regard, after almost two (2) years of litigation, the surveillance video taken by the defendant has come to light within a few weeks of trial. Significantly, the defendant has not notified the court, nor presumably the plaintiff, of when the surveillance video was taken. It is impossible for the court to make any determination as to whether there is likely to be any intervening changes in the plaintiff's physical condition which would justify the taking of a second deposition. The defendant has failed to offer any *evidence* to suggest any intervening changes have occurred,

aside from a single sentence in her brief which states:

"Here, defendant believes, and therefore avers, that there have been intervening changes in the plaintiff's physical condition since her deposition of March 2, 2000, which diminished the impeachment value of the deposition taken prior to the surveillance." (Doc. No. 26, p. 3). This statement, without further support or evidence, is not enough.

█ For the reasons stated above, the court believes that the defendant must be required to disclose the surveillance videotape to the plaintiff, if she intends to use it at trial in this case. Should the defendant make a determination that she does not wish to use the surveillance videotape at trial, she need not disclose the contents to the plaintiff. If, however, the defendant wishes to use the tape at trial, that use will be limited to impeachment only as the tape was not previously disclosed as substantive evidence as required by Fed.R.Civ.P. 26(a)(3)(c). If the defendant intends to use the tape for impeachment only, she must disclose the tape within five (5) days of the date of this order or be precluded from any use of the surveillance video at trial.

An appropriate order will follow.

### *ORDER*

**AND NOW THIS 18th day of September,** upon consideration of the plaintiff's motion to preclude defendant's introduction at trial of surveillance video evidence (Doc. No. 24), **IT IS ORDERED THAT** the motion is **GRANTED IN PART** and **DENIED IN PART**, specifically:

1. The defendant is precluded from using the surveillance videotape as substantive evidence;

2. If the defendant intends to use the surveillance videotape as impeachment evidence, she must produce a copy of that videotape for the plaintiff within five (5) days of the date of this order or be precluded from using that video surveillance tape during the course of the trial; and,

3. If the defendant chooses not to offer the video surveillance tape for any pur-

176

pose, she is not required to produce a copy of the videotape surveillance for the plaintiff.